UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Moien Louzon,

    Plaintiff,

v.                                             Case No.: 09-11205

Ford Motor Co.,                         Honorable Sean F. Cox

    Defendant.

_____/

ORDER GRANTING SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 56(f)

Plaintiff Moien Louzon ("Plaintiff" or "Louzon") filed this claim against his former employer, Defendant Ford Motor Company ("Defendant" or "Ford"), alleging age discrimination under the Age Discrimination in Employment Act ("ADEA") and national origin discrimination under Title VII (Count I), as well as retaliation for engaging in protected activity (Count II). Plaintiff also alleges similar state law claims under the Elliot-Larson Civil Rights Act ("ELCRA"). On August 12, 2011, this Court granted Defendant's motion in limine to exclude evidence regarding non-comparable employees. In light of the Court's determination on Defendant's motion in limine, and after reviewing the transcript of the July 12, 2010 hearing before Judge Anna Diggs Taylor on Defendant's motion for summary judgment, the Court ordered Plaintiff to show cause, pursuant to FED. R. CIV. P 56(f), as to why this Court should not grant summary judgment in favor of Defendant on Counts I and II of Plaintiff's Complaint.

BACKGROUND

I.     Factual Background

1

While employed at Ford, Louzon worked as a hardware engineer in the Powertrain Control Modules and Sensors Design and Release department, which is a part of the Powertrain Engineering organization of Product Development. (Def's Br. at 2). Product Development consists of approximately 5,000 product engineers and over 300 managers.

In January 2007, Louzon began planning a trip to Palestine to visit his mother, whom he alleged was ill. (Plf's Br. at 4). Louzon scheduled his vacation for May 31, 2007, and planned his vacation to coincide with Ford's general shutdown period from July 2nd to July 8th so that he could extend his trip for a total of 5 weeks. *Id*. In March 2007, Louzon notified his supervisor, Mary Ann Kantrow, of his vacation. The vacation was also approved by Louzon's manager, Owen Bailey ("Bailey"). *Id*. Before Louzon left for his vacation, however, Bailey notified Louzon that he required Louzon to return to work on June 25, 2007, because of an imminent, high-profile product build. (Def's Br. at 2). On May 31, 2007 Louzon left for his 3 ½ week vacation. *Id*.

Louzon first spent some time visiting the pyramids of Egypt and the Sinai Desert. (Louzon Dep. at 34). Soon after Louzon arrived in Gaza, violence broke out and the Israeli government closed its borders. (Plf's Br. at 6). Louzon became stranded in Palestine. Louzon's June 25th return date passed and Ford did not receive any word from Louzon as to why he had not returned to work. On July 4th – nine days after his scheduled return date – Louzon sent an email to Bailey and Kantrow, explaining his situation. *Id*. Upon receiving this email, Bailey placed Louzon on a 45-day leave of absence.

According to Bailey, he initially intended to place Louzon on a 30-day leave of absence, but due to an error, Louzon's leave of absence was inputted into the system as a 45-day leave of

2

absence. Nonetheless, Bailey decided to allow Louzon the benefit of the 45-day leave of absence. (Bailey Dep. at 88-89). Personal Relations Representative Leslie Harris ("Harris") expressed disapproval at the idea of placing Louzon on a leave because he felt that Louzon had misled his supervisors about his return date and questioned whether Louzon actually adjusted his vacation to return on June 25th, as ordered by Bailey.

Throughout Louzon's leave of absence period, Louzon exchanged a number of emails with his supervisors, but never indicated when he would be able to return to work. On August 22, 2007, Harris, still under the impression that Louzon was granted only a 30-day leave, emailed Human Resources Representative Michelle Bricker ("Bricker") and suggested that, because Louzon had not returned to work, that a 5-day "quit letter" should be sent to Louzon. (Plf's Br., Ex. I at 183). Harris then processed the quit letter, which stated that Louzon had 5 business days to submit documentation to Harris to explain his absence from work. (Plf's Br., Ex. N). By August 24, 2007, the last day of Louzon's 45-day leave of absence, Louzon had still not returned to Ford.

On August 24, 2007, Louzon emailed Bailey and notified him that he and his family had been evacuated from Gaza and that he was working on getting back to the United States "ASAP." (Plf's Br., Ex. I at 359). This email was forwarded to Harris. Harris responded to the person who forwarded him the email by stating, "Pretty convenient timing if you ask me." *Id*. at 359. Additionally, Michell Bricker stated, "Hmmmm. . . something isn't right with this whole situation (and I know you know what I mean)." *Id*.

Bailey testified that he made the decision to terminate Louzon prior to receiving Louzon's email on August 24, 2007, because he was not sure when Louzon would return and

3

because other employees had sufficiently assumed Louzon's job duties. (Bailey Dep. at 87-90). Louzon's termination was categorized as a "voluntary quit" under the Unpaid Personal Leave Policy.

Not knowing that his employment had been terminated, Louzon finally returned to work on August 31, 2007. Human resources then notified Louzon that he had been terminated and escorted him out of the building.

## II.     Procedural Background

Louzon filed this employment discrimination action on March 3, 2009, and Ford removed the case to this Court on March 31, 2009. Louzon's case is based upon the premiss that Ford treated seven, current or former Ford employees more favorably than him with regard to leave of absence periods.

This case was originally assigned to the Honorable Anna Diggs Taylor. Judge Taylor denied Ford's motion for summary judgment but did not issue an opinion on the motion. Instead, ruling from the bench, she denied Ford's Motion for Summary Judgment at a hearing on July 12, 2010. (*See* July 12, 2010 transcript, Doc. No. 71). Although Ford raised the issue of similarly-situated employees, Judge Taylor did not address the facts underlying this issue at the hearing. In making her decision, Judge Taylor stated, without further explanation:

> The motion has to be denied. The plaintiff, in the light most favorable, has presented evidence supporting the allegation that he was treated differently from Amro, who was similarly situated.
>
> The retaliation claim also, although it was not argued, appears to have been a matter of differential treatment so -- and why has the plaintiff never got notice when he must return? Why didn't he ever get -- well, never got notice that he was going to be fired and never got a deadline as to when he must return. And why, first of all, did he get only 87 days when Amro got 102.

>I'm sorry, the motions have to be denied.

(July 12, 2010 Transcript at 28).

On December 6, 2010, this case was reassigned to this Court. On April 26, 2011, Ford filed "Defendant's Motion *In Limine* To Exclude Evidence and Argument Concerning Non-Comparable Employees." (Doc. No. 67). In its motion, Ford argued that Louzon failed to establish that the seven current or former Ford employees were similarly-situated as Louzon – a key element in proving a *prima facie* case of employment discrimination – and therefore evidence relating to these employees was irrelevant and should be excluded from a trial on this matter.

The Court held a hearing on Ford's motion in limine on August 4, 2011, and granted Ford's motion (8/12/11 Opinion & Order, Doc. No. 72). The Court found that Louzon failed to establish that any of the seven Ford employees were similarly-situated as him.

As a result of the Court's order granting Ford's motion in limine, the Court found that there were material facts that may not have been in dispute. With regard to Count I of Louzon's complaint, the Court stated, "it does not appear that Louzon will be able to present any evidence at trial of similarly-situated employees outside of the protected class who were treated differently. Thus, it does not appear that Louzon will be able to present sufficient evidence to establish a *prima facie* case of discrimination." (8/12/11 Opinion & Order at 20). Accordingly, the Court ordered Louzon to show cause as to why this Court should not grant summary judgment in favor of Ford on Count I of Louzon's Complaint.

Similarly, with regard to Count II of Louzon's complaint, the Court stated, "After reviewing the Final Pretrial Order (Doc No. 65) and the record evidence in this action, it does

5

not appear that Louzon has identified any evidence to support his assertion that Bailey provided a potential employer with a negative reference. Moreover, Ford has submitted evidence to refute the allegation." (*Id*. at 21). The Court therefore ordered Louzon to show cause why this Court should not grant summary judgment in favor of Ford with respect to Louzon's retaliation claim. The Court specifically required Louzon "to present evidence of a causal connection between Louzon's EEOC charge and the alleged adverse actions taken by Ford." (*Id*. at 22).

## ANALYSIS

As stated above, the Court found that there were material facts that may not have been genuinely in dispute. When a court determines that material facts may not be genuinely in dispute, FED. R. CIV. P. 56(f)(3) permits the court to consider summary judgment on its own, independent of any motion filed by a party, but only after identifying for the parties the material facts that may not be in dispute.

On August 26, 2011, Louzon responded to the Court's August 12, 2011 Order to Show Cause, simply stating, "In light of the Court's Opinion and Order Granting Defendant's Motion in Limine dated August 12, 2011, to which Plaintiff takes exception, Plaintiff will be unable to present sufficient evidence to establish Counts I or II of Plaintiff's Complaint." (Plf's Resp., Doc. No. 73).

Louzon has failed to present any *relevant* evidence regarding similarly-situated employees outside of the scope of the protected classes that were treated differently than Louzon, and therefore has failed to create any genuine issue of material fact as to that element. Similarly, Louzon has failed to present any evidence of a causal connection between Louzon's EEOC charge and the alleged adverse actions taken by Ford. In turn, Louzon has not established

a *prima facie* case of age discrimination, national original discrimination, and retaliation against Ford.

Accordingly, the Court shall grant summary judgment, pursuant to Fed. R. Civ. P. 56(f)(3), in favor of Ford on Counts I and II of Louzon's complaint.

## CONCLUSION

For the reasons stated above, the Court GRANTS summary judgment in favor of Ford on Counts I and II of Plaintiff's complaint.

Accordingly, Plaintiff's complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

                                         S/Sean F. Cox
                                         SEAN F. COX
                                         UNITED STATES DISTRICT JUDGE

Dated: September 28, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2011, by electronic and/or ordinary mail.

                                         S/Jennifer Hernandez
                                         Case Manager